MILDRED V. HARLEY *vs.* BIG BEN MARKET COMPANY *et al.*
HARRY S. HARLEY *vs.* SAME.

JULY 24, 1953.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CONDON, J. These actions of trespass on the case for negligence were brought by a husband and wife against Big Ben Market Company, Adams Drug Co., Inc., and Edward Shore jointly, pursuant to general laws 1938, chapter 518, §1, to ascertain which, if any, was liable for injuries sustained by the wife in a fall in a market known as "The Farm Basket" at 22 East avenue in Pawtucket in this state. The cases were tried together in the superior court and in each case the trial justice directed verdicts in favor of Adams Drug Co., Inc. and Edward Shore, and thereupon the jury returned verdicts for the plaintiffs against Big Ben Market Company. The latter has brought the cases here by its bills of exceptions. Since it is the sole remaining defendant we shall hereinafter refer to it as the defendant.

At the time of the accident defendant was the lessee of the market and Edward Shore, by oral arrangement with defendant, was conducting such market on a portion of the premises under the trade name of "The Farm Basket." On another part of the premises toward the rear and on the right as one entered the market from East avenue, August Bakery was operating a concession from defendant for the sale of bakery products. Access to the premises by the public was solely by a door on East avenue. Shore's concession occupied the entire front of the premises over which it was necessary to travel to reach the bakery concession.

On the opposite side from the bakery a lunch counter was situated on a platform which was elevated above the level of the market floor. Near the counter and running back to the rear of the market the floor was higher than at the front near the door and was therefore constructed with a ramp. By reason of such construction the portion of the lunch counter platform near the front of the market was elevated much higher above the floor than it was toward the rear. Whether such platform was progressively higher than the level of the market floor all the way from the rear of the counter to the front of it at the height of the ramp is in dispute. The conflict in the evidence on this point will be referred to later.

On June 9, 1950 Mrs. Harley entered the market by the door on East avenue and walked up the ramp to the rear where she made a purchase. Thereafter she returned toward the front of the market and stopped at the lunch counter. The counter was L shaped and had fixed stools in front and at the rear around the corner of the L. Behind these stools there was a very small space on the platform where a patron might possibly stand when rising from the stool to leave the counter but the next step therefrom was down to the lower level of the floor. She sat on the first stool at the front of the counter. After she was seated she. was asked by another patron if she would move down. She did so and seated herself on the third stool.

Intending to leave the counter after being served, Mrs. Harley turned around on the stool to step on the floor, as she thought, and "went off in space." As a result of her fall she landed on the ramp with her head "down the ramp towards the East Avenue front door." She had never been in the market before and had not noticed that "the ramp was lower than the platform that the stools were on." She testified that while she was on the floor she noticed that there was a variance in the elevation of the platform above the floor at the point where she stepped on and where she attempted to step off. It was higher, she said, at the point

where she fell and there was no rail or barrier at the edge of the platform that ran along the edge of the ramp.

Whether the counter platform was higher above the floor at the point where she fell than it was where she first stepped on it is in dispute. According to the testimony of the witness for the defendant who drew a plan of the counter and platform showing the elevation of the latter above the floor at various places along its entire length, such elevation was higher at the point where Mrs. Harley stepped on than it was where she stepped off. A blueprint of this plan and the plan itself were admitted as defendant's exhibits and they corroborate the witness. But such plan was drawn by the witness a long time after the date of the accident and was admitted in evidence solely on the strength of the testimony of Edward Shore who stated that the premises were then in the same structural condition as they were at the date of the accident.

Mrs. Harley testified further that the floor and the platform had covering of the same color. This was not specifically denied by either Shore or the witness who drew the plan. The latter testified that there was a metal nosing on the edge of the platform behind the stools, which was originally bright metal but had been "used and abused." Mrs. Harley also testified that there was no rail or barrier at the counter platform where she fell. Shore did not deny this but testified there was a railing at the end of the counter at the front of the market near the place where the ramp began.

If we believe Mrs. Harley's testimony, and we must in considering defendant's motion for a directed verdict, the construction of the counter platform in proximity to a floor of different levels making necessary the use of a ramp created a hazard to invitees unfamiliar with the store. Whether in the circumstances of Mrs. Harley's unfamiliarity with such hazard she was guilty of negligence in getting off the stool in the way she did was a question for the jury and not one to be decided here as a matter of law. This court has often stated, following the early case of *Clarke* v. *Rhode Island*

*Electric Lighting Co.*, 16 R. I. 463, that negligence is rarely a question of law unless the standard of duty is fixed and the negligence is clearly defined and palpable.

On the facts of the case at bar an invitee's standard of duty called for the exercise of ordinary care consistent with the danger reasonably to be apprehended. For those acquainted with the structural condition of the floor and the counter platform such danger would be different from that to be reasonably apprehended by the plaintiff if the jury believed her testimony. She testified that she was not familiar with the premises and that at the time of the accident they were in the condition she described rather than as described by Shore. He testified that they were in the same condition at that time as they were when the plan was drawn. In the circumstances the trial justice in our opinion did not err in submitting the question of plaintiff's contributory negligence to the jury.

The defendant also contends that the trial justice erred in not directing a verdict in its favor because the evidence showed that Shore and not the Big Ben Market Company had control of the premises. We think such contention is untenable on the undisputed evidence that both Shore and August Bakery were tenants of defendant and that to get to the latter's concession it was necessary to traverse the front of the store through Shore's concession. Where there is such use in common by tenants it cannot be said as a matter of law that the landlord has no control of the premises.

In any event on the facts here it was not definite just what was the relation of Shore and defendant with regard to the operation of "The Farm Basket." Apparently Shore, who owned a half interest in the Big Ben Market Company, had some arrangement with it that was not simply the relation of landlord and tenant. From all the evidence viewed most favorably to plaintiffs, a reasonable inference could be drawn that the defendant had an interest in Shore's business. Therefore the trial justice did not err in denying the motion for a directed verdict, and defendant's exception to such denial is overruled.

The defendant excepted to six different portions of the trial justice's charge, each of which it contends was erroneous and prejudicial. We have carefully read the charge and we are unable to agree with defendant's contentions in support of those exceptions. On the whole the charge fairly stated the law applicable to the case and in any event if it lacked the precision and definiteness for which defendant appears to be contending such lack did not, in our opinion, amount to prejudicial error.

For the same reason the refusals of its five requests to charge, to which exceptions were duly taken and which have been briefed and argued here, were not prejudicial. While some of such requests if granted would have tended to perfect the charge, the failure to grant them did not render the charge defective. Though lacking in the perfection which defendant seems to seek, it nevertheless substantially met the requirements. We have purposely refrained from quoting here the specific portions of the charge relied on, the requests to charge which were refused, and certain evidentiary rulings, to all of which exceptions were taken, because such quotations and discussion of each exception would unnecessarily prolong this opinion without contributing anything of general application to the law governing cases of this kind.

All of the defendant's exceptions in each case are overruled, and each case is remitted to the superior court for entry of judgment on the verdict.

## ON MOTION FOR REARGUMENT.

### AUGUST 21, 1953.

PER CURIAM. After our decision in the above case the defendant Big Ben Market Company asked and received permission to file a motion for reargument. Pursuant to this permission it has filed such a motion, setting out therein certain reasons on which it bases its contention that justice requires a reargument of the case. We have carefully considered those reasons and we are of the opinion that they are without merit.

Motion denied.

CAPOTOSTO, J., and O'CONNELL, J., did not participate in decision on motion for reargument.

*Thomas F. Vance, Jr.*, for plaintiffs.
*William A. Gunning*, for defendant.